Patrick J. Murphy, WSB No. 5-1779
Scott C. Murray, WSB No. 7-4896
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone: (307) 265-0700
Facsimile: (307) 266-2306
E-Mail: pmurphy@wpdn.net
        smurray@wpdn.net
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability company, <br><br> Plaintiff, <br> v. <br><br> JOEY MARTINEZ, an Individual, and RENOVATIONS BUILDERS & DEVELOPERS, INC., a California Corporation. <br><br> Defendants. | Civil Action No. _____ |

**COMPLAINT**

COMES NOW Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain, through its counsel, Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., and for its Complaint ("Complaint") against Defendants Joey Martinez and Renovations Builders & Developers, Inc. ("RBD," together with Joey Martinez, "Defendants"), hereby asserts and claims as follows.

**I.     INTRODUCTION**

1. In May 2022, Plaintiff BCB Cheyenne LLC ("BCB") was introduced to Joey Martinez. Joey Martinez represented to Plaintiff that he had investor funds in excess of fifty million US Dollars

($50,000,00.00) (the "Investor Funds") available to him at Ahli United Bank ("AUB") in Bahrain. Joey Martinez represented that he needed $50,000.00 in order to cover transaction fees and other fees associated with the release and wiring of the Investor Funds to an account(s) of Joey's direction and/or choosing. Joey Martinez represented to Plaintiff that he had direct connections and contacts with certain high profile trade groups with whom he intended to place the Investment Funds with through a "Buy/Sell" Program to generate significant returns in short periods of time.

2. Joey Martinez solicited BCB Cheyenne for a loan of $50,000.00 in order to cover the transaction fees and other fees associated with the release and wiring of the Investor Funds. Joey Martinez represented to Plaintiff that he would invest a significant amount of money received from the returns of the Buy/Sell Program into Plaintiff's business in the form of low interest loans and/or for other equitable consideration if Plaintiff provided the $50,000.00 loan. Mr. Martinez additionally promised a one-time stipend of one hundred fifty thousand dollars ($150,000.00) cash payment from the first proceeds from the proposed Buy/Sell Program. Plaintiff desired the loan, investment funds, and stipend Joey Martinez promised, and Plaintiff subsequently entered into a Promissory Note effective June 1, 2022, (the "Note") with Joey Martinez, RBD, and Richard Swanson (the "Co-Borrowers"). Plaintiff wired funds to RBD on June 2, 2022.

3. The Note's Due Date was July 1, 2022. Defendants did not fulfill its obligations to repay the Note by the Due Date, which triggered an automatic Default and caused all amounts owing under the Note to become due immediately.

4. In the ensuing days and months following the Due Date, Plaintiff continued to reach out to the Defendants to collect on the Note, but Defendants chose not to cooperate, communicate, or pay any portion of the Note. In good faith, Plaintiff continued efforts to resolve the matter, but

Defendants chose to ignore Plaintiff's communications and/or to lead on Plaintiff with promises of payment from anticipated wire transactions or other anticipated funds (which never occurred).

5. From the onset of the relationship between Defendants and Plaintiff relating to the funds Plaintiff subsequently loaned in the Note, Defendants made representations of their involvement and/or access to, among other things, significant Investment Funds and/or other funds, gold/bullion transfers, currency exchanges, and trade deals that would provide the means to repay the Note and further provide low interest loans and investment funds into Plaintiff's business. Defendants, on several occasions, represented they were waiting on wire transfers of significant sums of money. On at least one occasion, Defendants provided Plaintiff with a wire Transaction Receipt showing a wire transfer of $5,000,000.00 initiated from an account at Ahli United Bank to RBD's Citibank account. Defendants' representations were material inducements for Plaintiff to consider and subsequently enter into an agreement whereby Plaintiff executed the Note and loaned money to Defendants.

## II.   PARTIES, JURISDICTION AND VENUE

6. Plaintiff BCB Cheyenne LLC ("BCB") is a Wyoming limited liability company formed and filed in the State of Wyoming and authorized to do business in Wyoming.

7. Plaintiff BCB has eight members: Michael Murphy, Emory Patterson IV, Neil Phippen, Bryce Fincham, Stephen Randall, BCB Ventures LLC ("BCB Ventures"), CMV Global LLC ("CMV Global"), and Bayview Capital Investments LLC ("Bayview"). Mr. Murphy is domiciled in Colorado. Mr. Patterson is domiciled in Illinois. Mr. Phippen is domiciled in Colorado. Dr. Fincham is domiciled in Ohio. Mr. Randall is domiciled in Arizona. BCB Ventures is a Wyoming limited liability company. CMV Global is a Wyoming limited liability company. Bayview is a Wyoming limited liability company.

8. None of the members of Plaintiff BCB are domiciled in California. None of the members of BCB Ventures are domiciled in California. None of the members of CMV Global are domiciled in California. None of the members of Bayview are domiciled in California.

9. Defendant Joey Martinez, on information and belief, is domiciled in California.

10. Defendant Renovations Builders & Developers, Inc ("RBD") is a California corporation formed and filed with the California Secretary of State's office on July 31, 2006.

11. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship.

12. The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.000), exclusive of interest and costs in conformity with the provisions of 28 U.S.C. § 1332(a).

13. This Court has *in personam* jurisdiction over the Plaintiff and both Defendants. All Parties have the requisite minimum contacts with Wyoming to establish this Court's *in personam* jurisdiction over them pursuant to WYO. STAT. § 5-1-107 and the Due Process Clause of the United States Constitution. All of them have purposefully availed themselves of doing business in Wyoming.

14. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' acts and omissions giving rise to Plaintiff's claims occurred, or was to occur, in Wyoming. Further, the subject promissory note says: "This Note shall be construed in accordance with the laws of the State of Wyoming, without regard to principles of conflicts of laws, and shall be performable in Natrona County, Wyoming."

### III.   FACTS COMMON TO ALL CLAIMS

15. Joey Martinez is an individual, and on information and belief, resides in Fountain Valley, California.

16. Renovations Builders & Developers, Inc. ("RBD") is a California corporation. On information and belief: Joey Martinez is the President of RBD, Mr. Martinez possessed a controlling interest in RBD at the time of entering into the Note with Plaintiff, and Mr. Martinez continues to possess a controlling interest in RBD.

17. On June 2, 2022, Richard Swanson, Joey Martinez, and RBD (the "Co-Borrowers") entered into a Promissory Note (as Borrowers) with BCB Cheyenne LLC (as Lender) with an effective date of June 1, 2022. A true, correct, and complete copy of the subject Promissory Note is attached hereto, marked **Exhibit 1**, and incorporated by reference.

18. Joey Martinez and RBD provided and pledged the collateral to guarantee repayment of the Note.

19. On June 2, 2022, Plaintiff sent Co-Borrowers an email with a fully executed copy of the Note and confirmation that the wire transfer of Plaintiff's funds relating to the Note was scheduled.

20. On June 2, 2022, Joey Martinez sent Plaintiff an email acknowledging receipt of the funds Plaintiff wired to him.

21. On July 1, 2022, The Note became due and the principal balance was not paid. Nonpayment of the Note caused automatic default of the Note and funds to become immediately due, without demand or notice.

22. On July 7, 2022, Plaintiff began reaching out to Defendants requesting repayment of the Note and sent the Co-Borrowers a copy of Plaintiff's wire instructions.

23. Between July 2022 through March 2023, in good faith, Plaintiff and Defendants communicated intermittently as Defendants provided updates on anticipated wires to satisfy and repay the Note.

24. By April 2023, Defendants had slowed communication and stopped responding to Plaintiff's attempts to communicate.

25. On April 27, 2023, Emory Patterson sent Co-Borrowers an email requesting repayment of the Note and interest.

26. Between May 2023 and October 2023, Plaintiff made multiple attempts to reach out to Defendants requesting repayment of the Note.

27. On October 2, 2023, Emory Patterson had a discussion with Joey Martinez and followed up with another email requesting repayment of the Note in full or to establish a repayment plan by October 6, 2023. Joey Martinez conveyed his desire to repay the Note and told Plaintiff that he was expecting a wire transfer with enough funds to cover full repayment of the Note. Plaintiff agreed to wait until the end of October 2023 to see if Joey Martinez could provide proof of the wire transfer.

28. On October 17, 2023, Joey Martinez provided Plaintiff with a wire Transaction Receipt showing a wire transfer of $5,000,000.00 initiated from an account at Ahli United Bank to RBD's Citibank account (from which RBD could pay the amounts owing to Plaintiff BCB). A true, correct, and complete copy of the subject Transaction Receipt is attached hereto, marked **Exhibit 2**, and incorporated by reference.

29. After the end of October 2023 passed and Defendants did not repay the Note or establish a payment plan, Plaintiff continued to reach out to Defendants requesting repayment of the Note. Plaintiff's attempts to contact Joey Martinez went unanswered.

30. On November 22, 2023, Emory Patterson sent Joey Martinez another email requesting an update and repayment of the Note.

31. On November 27, 2023, Joey Martinez replied, "We are working to have the funds back to you on or before Friday.  I will update you once I receive the funds."

32. On November 28, 2023, Plaintiff sent Joey Martinez an email requesting a good faith partial payment of $5,000.00 by November 29, 2023.

33. On November 29, 2023, Joey Martinez never responded and never sent the good faith partial payment.

34. On November 30, 2023, Emory Patterson sent Joey Martinez a text message, "Hey Joey, did you see the email I had sent on Tuesday?" Joey Martinez never responded.

35. On December 1, 2023, Plaintiff did not receive a good faith payment or the funds to repay the Note.

36. On December 22, 2023, Michael Murphy sent Defendants an email containing the payoff information for the Note.

37. Between December 2023 through January 2024, Plaintiff continued to attempt to contact Defendants to collect repayment of the Note.

38. On February 9, 2024, Emory Patterson sent Co-Borrower Richard Swanson an email demanding a date certain for repayment of the Note. Emory Patterson additionally stated, "If Joey cannot provide a date certain, there is a mechanism within the note to account for an event of default:

    > As collateral for repayment of unpaid principal, Co-Borrowers agree that if in the event of default, and after thirty (30) days of the event of default the remaining principal has not been repaid to Lender, then Co-Borrowers agree to execute a mortgage upon the following real property with Lender designated as mortgagee so as to secure Lender's interest in and to such property up to the amount of unpaid principal and all costs of collection, including reasonable attorney fees:
    >   172 E Wilson St #A, Costa Mesa, CA 92627
    >   172 E Wilson St #B, Costa Mesa, CA 92627

39. For the remainder of February 2024, Joey Martinez did not respond to Plaintiff's attempts to contact him with request for repayment of the Note.

40. On March 1, 2024, Michael Murphy sent a text message to Co-Borrowers requesting a written status update on repayment of the Note and to schedule a meeting to discuss repayment options. Defendants did not provide a status update.

41. On March 4, 2024, Michael Murphy sent a text message to Co-Borrowers, which was specifically addressed to Defendants, requesting a written status update on repayment of the Note. Defendant Joey Martinez did not respond or provide a status update.

42. On March 5, 2024, Michael Murphy sent a text message to Co-Borrowers, which was specifically addressed to Defendants, requesting a status update on repayment of the Note. Defendant Joey Martinez did not respond or provide a status update.

43. On March 7, 2024, Michael Murphy sent a text message to Co-Borrowers, which was specifically addressed to Defendants, requesting a written status update on repayment of the Note. Joey Martinez responded, "the last update I have received is that the funds will be available by Wednesday"

44. On March 13, 2024, Michael Murphy sent a text message to Co-Borrowers, which was specifically addressed to Defendants, requesting a status update on the repayment of the Note. Defendant Joey Martinez did not respond or provide a status update.

45. On March 21, 2024, Michael Murphy sent a text message to Co-Borrowers, which was specifically addressed to Defendants, requesting a status update on the repayment of the Note. Defendant Joey Martinez did not respond or provide a status update.

46. On March 27, 2024, Michael Murphy sent a text message to Co-Borrowers, which was specifically addressed to Defendants, requesting a written status update on the repayment of the Note. Defendant Joey Martinez did not respond or provide a status update.

47. On March 28, 2024, Michael Murphy sent a text message to Co-Borrowers, which was specifically addressed to Defendants, conveying the importance of communicating and keeping lines of communication open. Defendant Joey Martinez did not respond.

48. On April 3, 2024, Michael Murphy sent a text message to Co-Borrowers, which was specifically addressed to Defendants, requesting a status update on the repayment of the Note. Defendant Joey Martinez did not respond or provide a status update.

49. On April 16, 2024, Michael Murphy sent a text message to Co-Borrowers, which was specifically addressed to Defendants, requesting a call to discuss the repayment of the Note. Defendant Joey Martinez did not respond or provide any availability for a call.

50. On May 1, 2024, Michael Murphy sent a text message to Co-Borrowers, which was specifically addressed to Defendants, requesting a status update on the repayment of the Note. Defendant Joey Martinez did not respond or provide a status update.

51. On May 3, 2024, Emory Patterson sent a text message to Co-Borrowers, which was specifically addressed to Defendants, requesting a call to discuss the repayment of the Note. Defendant Joey Martinez did not respond or provide any availability for a call. Co-Borrower Rick Swanson replied, "I will call in the morning and get you caught up. Joey is in Kenya and then onto Uganda, returning next Thursday."

52. On May 29, 2024, Emory Patterson sent a text message to Joey Martinez requesting a call to discuss the repayment of the Note and offered, "to accommodate any time slot in any timezone that works for you. What are some available days/times we can connect between now and Tuesday June 4th?" Defendant Joey Martinez did not respond or provide any availability for a call.

53. Between June 2024 through September 2024, Plaintiff continued to attempt to contact, communicate, and coordinate repayment of the Note from Defendants. Defendants continually refused to communicate with Plaintiff to repay the Note and to execute a mortgage upon the specified real property with Lender designated as mortgagee so as to secure Plaintiff BCB's

interest in and to such property up to the amount of unpaid principal and all costs of collection, including reasonable attorney fees.

54. On October 18, 2024, Plaintiff BCB discovered that Defendants had sold one of the two real estate units that were provided as collateral in the Note. Defendants never notified Plaintiff of their intent to sell, or that they were selling, the collateral provided for in the Note.

55. On October 31, 2024, Emory Patterson and Michael Murphy had a video call with Defendant Joey Martinez and expressed their dissatisfaction and concern in discovering that Defendants had sold one of the units that was collateral backing the Note. Defendant Joey Martinez shared that the other unit was now under contract for sale as well and that he intended to pay Plaintiff with proceeds from the sale. Emory Patterson and Michael Murphy agreed to accept repayment from the proceeds of the sale if Joey Martinez would place Plaintiff on the closing statement (so Plaintiff would be paid at closing). Joey Martinez agreed and said he would put Plaintiff and his escrow closing agent on a shared email thread to coordinate repayment of the Note upon the closing of the property. Joey Martinez conveyed that the closing was anticipated for November 7, 2024.

56. On the morning of November 4, 2024, Defendants had not coordinated and/or connected Plaintiff with Defendants' escrow closing agent. As a result, Michael Murphy followed up requesting an update and requested to be put in touch with Defendants' escrow closing agent.

57. On the evening of November 4, 2024, Defendants had not responded to Michael Murphy's request for an update and/or request to be put in touch with Defendants' escrow closing agent, so Emory Patterson texted Joey Martinez requesting that he respond to Michael Murphy's text and provide an update. Defendants did not respond.

58. By November 6, 2024, Defendants still hadn't responded, provided an update on the closing, or put Plaintiff in contact with its closing agent. Consequently, Emory Patterson sent Joey

Martinez another follow-up text requesting a status update. Joey Martinez responded he had to travel unexpectedly and that "Nothing has happened yet." Emory Patterson requested Defendant's availability to talk and Joey Martinez replied, "Give me a few hours". Emory Patterson responded, "Ok. We're on standby." Joey Martinez never responded and never called.

59. On November 7, 2024, Emory Patterson sent Joey Martinez a text, "Hello Joey, I just tried calling you. When can we talk?" Joey Martinez called Emory Patterson later in the evening and said the closing had not happened, but that he anticipated the closing later the following week. Emory Patterson again requested Defendants put Plaintiff in contact with its escrow closing agent and Joey Martinez agreed to send an email connecting Plaintiff with his escrow closing agent.

60. By November 12, 2024, Defendants had not put Plaintiff in touch with its escrow closing agent. Emory Patterson followed up with a text message to Defendants, "You had said you anticipated closing this week and as early as tomorrow. You mentioned you would know more details by today. Do you have a closing date established? If not, where do things stand?" Defendants did not respond.

61. On November 13, 2024, Emory Patterson sent Joey Martinez a text message: "Joey, Can you please let me know where things stand?" Joey Martinez did not respond.

62. On November 18, 2024, Emory Patterson sent a text message to Joey Martinez requesting an update. Joey Martinez did not respond.

63. On November 19, 2024, Emory Patterson sent Joey Martinez a text message requesting a call. Joey Martinez did not respond.

64. On November 21, 2024, Emory Patterson sent Joey Martinez a text message, "Joey, What is the earliest availability you have to speak with us today? Please let us know asap." Joey Martinez did not respond.

65. On December 3, 2024, after not receiving any response from Defendants over the previous three and a half weeks, Plaintiff sent Defendants a formal Demand Letter and Payoff Letter to satisfy the Note. Plaintiffs provided until Friday December 6, 2024 for Defendants to repay the principal balance and interest before additional interest and other fees accrued. Defendants did not respond.

66. On December 6, 2024, Emory Patterson sent Joey Martinez a text message, "Joey, when is your soonest availability to have a call with us?." Joey Martinez did not respond – and has not responded – as of December 24, 2024.

67. Plaintiff has made every reasonable effort to work in good faith with Defendants to resolve the dispute and collect payment to satisfy the note, but Defendants have willfully obstructed, delayed, and avoided repayment.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

68. All of the allegations in paragraphs 1-67 above are incorporated by reference and restated here.

69. Defendants promised to repay Plaintiff's $50,000.00 principal loan to Defendants, along with a $150,000.00 stipend, by July 1, 2022.

70. Defendants have not paid Plaintiff any of the monies they owe to Plaintiff.

71. Defendants' Promissory Note in favor of Plaintiff is in default.

72. Defendants have materially breached their agreements to pay Plaintiff the principal sums of $200,000 by July 1, 2022.

73. Plaintiff has suffered damages in the principal sum of $200,000.00, together with pre-judgment default interest of $12,123.29 (as of December 3, 2024) and its attorney fees, for having to seek collection of these principal amounts and interest.

## SECOND CLAIM FOR RELIEF
## FRAUDULENT INDUCMENT

74. All of the allegations in paragraphs 1-73 above are incorporated by reference and restated here.

75. As an inducement for Plaintiff to loan $50,000.00 to Defendants, Defendants represented to Plaintiff that Defendants would pay Plaintiff the sum of $150,000.00 in consideration for Plaintiff loaning $50,000.00 to Defendants.

76. Plaintiff relied on Defendants' promise to pay Plaintiff $150,000.00 as a stipend.

77. Defendants promise to pay Plaintiff this $150,000.00 was an intentional misrepresentation calculated to induce Plaintiff to loan $50,000.00 to Defendants.

78. Defendants never had any intention of providing $150,000.00 as a stipend to Plaintiff.

79. Acting in reliance on Defendants' fraudulent promise as inducement, Plaintiff provided its $50,000.00 to Defendants.

80. Defendants' have materially breached and are in default on their promise to pay Plaintiff the $150,000.00 stipend.

81. Defendants' intentional misrepresentations and conduct constitute fraudulent inducement. Plaintiff would never have loaned $50,000.00 to Defendants if Plaintiff had known that Defendants never had any intention of paying the promised $150,000.00 stipend to Plaintiff.

82. As a result of Defendants' fraudulent inducement, Plaintiff has suffered the loss of its $50,000.00 loan, default interest thereon, and its receipt of the $150,000.00 stipend.

WHEREFORE, Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain prays for the following relief:

A. That judgment be entered in favor of Plaintiff and against both Defendants, jointly and severally, in an amount to be proven at trial, but for no less than $212,123.29;

B. That Plaintiff is entitled to punitive damages based on Defendants' fraudulent inducement;

C. That Plaintiff is entitled to pre-judgment and post-judgment interest at the legal rates;

D. That Plaintiff recover all of its attorney fees and costs against all Defendants;

E. That Defendants be enjoined from making or publishing any defamatory statements, in the public domain, about Plaintiff or its members; and

F. For such other and further relief as the Court deems just and proper.

DATED this 24th day of December, 2024.

        BCB CHEYENNE LLC d/b/a/ BISON BLOCKCHAIN,
        Plaintiff

        /s/ Patrick J. Murphy
        Patrick J. Murphy, WSB No. 5-1779
        Scott C. Murray, WSB No. 7-4896
        Williams, Porter, Day & Neville, P.C.
        159 N Wolcott St., Suite 400
        Casper, WY 82601
        Ph: (307) 265-0700
        pmurphy@wpdn.net
        smurray@wpdn.net

        *Attorneys for Plaintiff BCB Cheyenne LLC d/b/a Bison Blockchain*